1
2
3
4
5
6
7

ERIC A. GROVER, Esq. (SBN 136080)
KELLER GROVER LLP
425 Second Street, Suite 500
San Francisco, CA 94107
Tel. (415) 543-1305; Fax: (415) 265-7861
eagrover@kellergrover.com

Attorneys for Plaintiff
CHERYL FORD

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

8
9
10
11
12
13
14
15
16
17

| | |
|---|---|
| CHERYL FORD, on behalf of herself, the general public, and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act, | Case No.: C07-02715 TEH |
| Plaintiff, | CLASS ACTION |
| v. | NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| PILOT TRAVEL CENTERS LLC and DOES 1 through 10 inclusive, | DATE:    May 12, 2008<br>TIME:    1:30 p.m.<br>COURTROOM:   12 (19th Floor)<br>JUDGE:  Hon. Thelton E. Henderson |
| Defendants. | |

18
19
20
21
22
23
24
25
26
27
28

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.: C07-02715 TEH

**PLEASE TAKE NOTICE THAT** on May 12, 2008, at 1:30 P.M., or as soon thereafter as the matter may be heard, in Courtroom 12 of the above-entitled Court, Plaintiff Cheryl Ford ("Plaintiff") will and hereby does move for an Order (1) preliminarily approving the proposed class action settlement in the above-captioned case, (2) conditionally certifying two settlement classes, (3) approving appointment of a claims administrator, (4) approving and directing distribution of notice to the settlement classes, and (5) setting a final fairness and approval hearing.

This Motion, which will be unopposed, is made pursuant to Federal Rule 23(e), which requires court approval of the settlement of a putative class action and allows the Court to preliminarily certify a class for settlement purposes. This Motion is based upon the fairness, adequacy, and reasonableness of the proposed settlement, that the settlement is in the best interests of the settlement classes as a whole, and that the proposed notice and claims procedures proposed by the Parties are adequate to ensure class members have the full opportunity to participate in, opt out of, or object to the settlement.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Eric A. Grover, with exhibits including the Joint Stipulation of Settlement and Release Between Plaintiff and Defendant, and upon such evidence or oral argument as may be presented at the hearing.

Respectfully submitted,

Dated: March 31, 2008                KELLER GROVER LLP


By:_____/s/_____
ERIC A. GROVER
Attorneys for Plaintiff Cheryl Ford
and Proposed Class Counsel

i

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ................................................................................. 5

3

II.     PROCEDURAL HISTORY AND SUMMARY OF CLAIMS ............................ 7

4

III.    SUMMARY OF THE SETTLEMENT TERMS ................................... 11

5

6

IV.     LEGAL ANALYSIS.......................................................................... 15

7

        A.   The Approval Process ....................................................15

8

        B.   The Proposed Settlement Is Fair, Adequate and Reasonable and Was

9

             Reached Through Arms-Length Negotiations ............................ 17

10

        C.   The Two Settlement Classes Should Be Certified for Settlement

11

             Purposes ......................................................................... 21

12

                 a.   The Settlement Classes are Numerous.................................... 21

13

                 b.   Common Questions of Law or Fact Among Members of the

14

                      Settlement Classes Exist ......................................... 22

15

                 c.   The Proposed Class Representative's Claims are Typical of

                      the Class Members' Claims .................................... 22

16

                 d.   The Adequacy of Representation Requirement is Satisfied ... 23

17

                 e.   The Settlement Classes also Satisfy the Rule 23(b)

18

                      Predominance Requirement .................................... 23

19

        D.   The Proposed Class Notice to the Class Members and Notice Procedure

20

             are Adequate .................................................................24

21

V.      CONCLUSION.................................................................. 25

22

23

24

25

26

27

28

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

1

**TABLE OF AUTHORITIES**

2

3

**Federal Cases**

4

*Aguilar v. Melkonian Enters.*,
   2006 U.S. Dist. LEXIS 80690 (E.D. Cal. Nov. 3, 2006) ..................................... 21

5

6

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................... 21

7

8

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ................................................... 3, 11, 20

9

10

*Dukes v. Wal-Mart, Inc.*,
   474 F.3d 1214 (9th Cir. 2007) ....................................................... 17, 18

11

*Franklin v. Kaypro*,
   884 F.2d 1222 (9th Cir. 1989) ........................................................... 11

12

13

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ........................................................... 13

14

15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................... *passim*

16

17

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (7th Cir. 1981) ........................................................... 13

18

*In re Initial Public Offering Secs. Litig.*,
   2007 U.S. Dist. LEXIS 19632 (S.D.N.Y. 2007) ............................................ 14

19

20

*In re Paine Webber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................... 15

21

22

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) .............................................. 2, 13

23

24

*Livingston v. Toyota Motor Sales USA*,
   1995 U.S. Dist. LEXIS 21757 (N.D. Cal. June 1, 1995) ..................................... 13

25

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................... 3, 14

26

27

iii

28

*Torrisi v. Tucson Elec. Power Co.*,
        8 F.3d 1370 (9th Cir. 1993) ........................................................ 12, 14, 20

*West v. Circle K Stores, Inc.*,
        No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598
        (E.D. Cal. June 13, 2006).......................................................... 13, 14, 15

*White v. Nat'l Football League*,
        41 F.3d 402 (8th Cir. 1994) ............................................................... 21

**Federal Rules**

Federal Rules of Civil Procedure Rule 23 ........................................... 11, 15, 19

**State Statutes**

Business and Professions Code §§ 17200, *et seq.* ...................................... 1, 3, 4

Labor Code § 212................................................................................ *passim*

Labor Code § 221............................................................................... 1, 3, 4

Labor Code § 2699.............................................................................. *passim*

**Treatises**

5 James W. Moore, *Moore's Federal Practice* § 23.85 (3d ed. 2002) ............................. 15

*Manual for Complex Litigation, Second* § 30.44 (1985) ............................................. 2, 12

Newberg & Conte, *Newberg on Class Actions*, § 11.25 (3d ed. 1992) ...................... 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Cheryl Ford ("Plaintiff") brought this action on behalf of herself and a proposed class of former and current employees of Defendant Pilot Travel, Inc. ("Defendant" or "Pilot") alleging that Defendant issued paychecks to its California employees that fail to conform to the requirements of California Labor Code § 212, charged its employees fees to cash their paychecks at Pilot Travel Centers in violation of Labor Code § 221.  Plaintiff further alleges that Defendant's paycheck practices are unfair business practices in violation of Business and Professions Code §§ 17200, *et seq*. Defendant denies the allegations in their entirety and contends that it has complied with the applicable law in all respects.

Plaintiff and Defendant (collectively the "Parties") engaged in extensive informal discovery.  Defendant turned over detailed information concerning the types of paychecks issued to its California employees dating back to April 23, 2003, along with a sample of paychecks which contained information demonstrating how the checks had been negotiated.  Defendant further provided information concerning the number of live paychecks issued during the relevant statutory periods and the number of employees who had received such paychecks and the number of check cashing fees Defendant charged its employees who cashed their paychecks at Defendant's locations.

With that information, the Parties were able to engage in informed settlement discussions culminating in a formal meditation session in front of a well-respected mediator, Mark S. Rudy, Esq.  After a full day of mediation and three months of follow-up negotiations conducted with Mr. Rudy's assistance, the Parties reached a tentative settlement ("Settlement"), the terms of which are set forth in the Joint Stipulation of Settlement and Release Between Plaintiff and Defendant ("Stipulation").  The Stipulation

is attached as Exhibit 1 to the Declaration of Eric. A. Grover in Support of Motion for Preliminary Approval of Class Action Settlement ("Grover Decl.") submitted herewith.

To settle the matter, the Stipulation requires Defendant to pay a total settlement sum of up to $925,000. The Settlement will result in significant financial benefit to participating claimants. *See* Ex. 1 at ¶ 14(c) and (d). Defendant's employees have also already benefited because Defendant has instituted a free check cashing program that is clearly marked on employee paychecks. *See id.* at ¶ 7. In addition, the Settlement provides substantial monetary benefits to the State of California's Labor & Workforce Development Agency ("LWDA") which is focused on the enforcement of California's labor laws and educational goals. *See id.* at ¶ 14(c).

The Settlement is the result of arm's-length negotiations by experienced counsel with the assistance of an experienced mediator. More importantly, the Settlement will result in significant financial benefit to the participating claimants, on terms that are by any measure fair, reasonable and adequate. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (settlement terms must be fair, reasonable and adequate). Preliminary approval should be granted because the proposed Settlement is "within the range of possible approval," and the Court will have another opportunity to review its terms and hear any Class Member input at the Final Fairness Hearing. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007), citing *Manual for Complex Litigation, Second* § 30.44 (1985).

The Parties have agreed on a Notice Packet, which includes a proposed short Class Notice and Claim Form to be sent to all Class Members and a longer notice form to be provided upon a Class Member's request for more information, attached as Exhibits A, B, and C to the Stipulation. The proposed forms of notice to the Class Members are more than adequate under pertinent standards as they describe the settlement terms in sufficient detail to alert Class Members with adverse viewpoints to come forward and be

6

heard.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The Parties also reached an agreement regarding attorneys' fees, which is fully disclosed in the Stipulation and is subject to the Court's final approval. The agreement regarding attorneys' fees is an appropriate reflection of the risk incurred by Plaintiff's counsel and the results obtained, which include a changed paycheck practice by Defendant (done without an admission of liability) and a significant payment to the State of California for enforcement of labor laws and for educational purposes.  The attorneys' fee amount is calculated at 25% of the maximum potential recovery.  *Hanlon*, 150 F.3d at 1029 ("[t]his circuit has established 25% of the common fund as a benchmark award for attorneys' fees."); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

For the reasons set forth below, Plaintiff respectfully requests that the Court (a) grant preliminary approval of the Settlement and the Stipulation, (b) conditionally grant certification of the proposed settlement classes, (c) approve appointment of the claims administrator, (d) authorize the mailing of the proposed class action notice packet; and (e) schedule a final fairness and approval hearing.

## II.    PROCEDURAL HISTORY AND SUMMARY OF CLAIMS

On April 23, 2007, Plaintiff filed a class action complaint in the Superior Court of the County of Alameda, that was subsequently removed to the United States District Court for the Northern District of California.  In the complaint, Plaintiff alleges, among other things, that Defendant issued paychecks to its California employees that fail to conform to the requirements of California Labor Code § 212 and that Defendant charged its own employees a check cashing fee in violation of Labor Code § 221.  Plaintiff asserts causes of action under Labor Code §§ 212, 221 and § 2699 and Business & Professions Code §§ 17200, *et seq.*  Plaintiff seeks damages and restitution for check cashing fees,

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

statutory penalties, injunctive relief, and attorneys' fees and costs on behalf of herself and a proposed class.  Grover Decl. ¶ 6.

Specifically, Plaintiff alleges that, until March 12, 2007,[1] Defendant issued paychecks that failed to state the name and address of an established place of business in California where employees could cash their checks for free.  Further, Plaintiff alleges that Defendant did not make any arrangements for its employees to cash their paychecks at a location within the state without a fee.  As a result, Plaintiff alleges that she and the Labor Code § 212 Class members were charged a fee to cash their paychecks at banks or other check cashing facilities in California and/or had holds placed on their paychecks delaying their ability to obtain their wages.  Grover Decl. ¶ 7.

In addition, Plaintiff alleges that she and a sub-class of employees also were charged check cashing fees by Defendant when they cashed their paychecks at Defendant's Pilot Travel Centers, allegedly violating Labor Code § 221.  Plaintiff also alleges that Defendant's practice of issuing such paychecks and taking a portion of employees' wages in the form of check cashing fees were unfair business practices in violation of California  Business & Professions Code §§ 17200, *et seq.*  Grover Decl. ¶ 8.

In connection with these allegations, Plaintiff asserted causes of action under Labor Code §§ 212, 221 and 2699 and Business & Professions Code §§ 17200, *et seq.*, seeking damages and restitution for check cashing fees, statutory penalties, injunctive relief, and attorneys' fees and costs.  Grover Decl. ¶ 9.

Defendant has denied all of these allegations and denies any liability to Plaintiff or the proposed class members.  To date, no class has been certified and no court has

---

[1] On or around March 12, 2007, Defendant began using paychecks issued by Wells Fargo, which has retail branches in California.  Defendant entered into an agreement with Wells Fargo to pay for the check cashing fees incurred when its employees presented paychecks to be cashed.  The new paychecks provide that they can be cashed free of charge at a Wells Fargo branch.

8

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

made any findings that Defendant engaged in any wrongdoing or wrongful conduct. Grover Decl. ¶ 10.

The Parties exchanged a substantial amount of informal discovery. As part of the information exchanged, Defendant provided information concerning the number of paychecks issued to its California employees dating from April 23, 2003 to March 11, 2007. Defendant provided information concerning the number of employees who received such paychecks. Defendant also provided examples of checks and relevant information regarding the manner in which the checks were negotiated. Grover Decl. ¶ 11.

Defendant also provided information that, from April 1, 2005 through March 11, 2007, Defendant charged its employees $2.00 when cashing a check at any of the Pilot stores. Defendant estimates that, during that time period, employees cashed approximately 53% of the live paychecks issued at Pilot Stores. Thus, the Parties were able to determine that approximately 36,289 paychecks were cashed by employees at Defendant's stores at a rate of $2.00 per check. Grover Decl. at ¶ 12.

All of the following information were produced by Defendant and reviewed by proposed Class Counsel in advance of reaching a tentative settlement:

- Estimates that Defendant issued approximately 68,469 live paychecks to approximately 2,987 of its California employees between April 23, 2003 and March 11, 2007 (the "Class Period").

- Estimates that Defendant issued approximately 15,305 live paychecks to approximately 1,144 of its California employees between April 23, 2006 and March 11, 2007.

- Defendant charged its employees $2.00 per check cashed at Defendant's Pilot stores.

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.: C07-02715 TEH

- With information available only from April 1, 2005 through March 11, 2007, estimates that 53% of the live paychecks issued during the Class Period were cashed in Pilot Stores and approximately 36,747 checks were chased during that time period, meaning Pilot employees paid Defendant approximately $73,494.86 in check cashing fees when negotiating their paychecks.

- The paychecks issued during the Class Period were drawn on Amsouth PTC Bank and Wachovia Bank, neither of which had retail branches in California during the class period.

- Information regarding the manner in which the checks had been negotiated.

Grover Decl. ¶¶ 13-14.

Plaintiff's counsel assessed Defendant's information and engaged in detailed discussions with Defendant's counsel regarding different settlement scenarios. Through this informal discovery and discussions, Defendant and Plaintiff exchanged information and documentation as well as apprised each other of their respective factual contentions, legal theories, and defenses. Both Parties were able to conduct a thorough investigation into the claims asserted in the complaints. In particular, the Parties were able to make informed assessments of the probability of certifying a class action, a critical hurdle in an action involving relatively small individual claims. Additionally, during the course of their information exchange, the Parties engaged in extensive good faith, arms-length negotiations including information exchanges, telephone conferences, and correspondence aimed at settling their dispute. In short, for a period of several months, the Parties engaged in extensive investigation and discovery into the factual and legal claims presented in the Complaint. Grover Decl. ¶ 15.

Armed with extensive data regarding Defendant's practice of issuing paychecks to its California employees, the Parties were able to engage in informed negotiations of possible settlement alternatives, which included sharing their respective factual and legal

10

positions.    During the course of these exchanges of information, the Parties engaged in extensive good faith, arms-length negotiations, including telephone conferences, correspondence, and formal mediation, all in an effort to settle their dispute.  After a full-day mediation session and three months of follow-up negotiations with the mediator's assistance, the Parties were able to reach a tentative resolution.  The Parties set forth the all of the terms of the settlement in the Stipulation attached as Exhibit 1 to the Grover Declaration. Grover Decl. ¶¶ 16-17.

## III.    SUMMARY OF THE SETTLEMENT TERMS

The Parties have agreed upon two settlement classes: the "Labor Code § 2699 Class" and the "Labor Code § 212 Class" (collectively the "Settlement Classes").  It is contemplated that an individual could be a member of both Settlement Classes.  The "Labor Code Section 2699 Class" is defined as:

> All California employees of Defendant who received one or more live paychecks from Defendant between April 23, 2006 and March 11, 2007.

The "Labor Code Section 212 Class" is defined as:

> All California employees of Defendant who paid a fee to Defendant or a third-party to cash one or more live paychecks received from Defendant between April 23, 2003 and March 11, 2007.

Members of the two Settlement Classes are referred to herein collectively as the "Class Members."   The Parties have further agreed and stipulated that these Settlement Classes be certified for the purposes of this settlement only.

The Stipulation requires that Defendant pay a total settlement value of up to, but not to exceed, $925,000, referred to as the "Gross Fund Value."   The Stipulation provides that the total sum from which the payments to the Class Members and the State of California's Labor & Workforce Development Agency ("LWDA") will be paid shall be referred to as the "Net Fund Value" and is the Gross Fund Value minus Court-approved attorneys' fees and costs, administration costs, enhancement award and settlement of Plaintiff's individual claims.

11

1    The Stipulation allocates $132,500 of the Net Fund Value to the Labor Code

2  Section 2699 Class. In accordance with California Labor Code § 2699, the LWDA will

3  receive 75% and the remaining 25% will be distributed to the Labor Code Section 2699

4  Class Members. Ex. 1 at ¶ 14(c). The payments to the Labor Code Section 2699 Class

5  Members will be made on a prorated basis dependent upon the number of Class

6  Members who submit valid claims.

7    The Stipulation also provides that up to $501,500 of the Net Fund Value is

8  allocated to the Labor Code Section 212 Class. Ex. 1 at ¶ 14(d). The formula for

9  distribution shall be: $10 per check for up to a maximum of 17 checks ($170). There are

10  an estimated 2,987 members of the Labor Code Section 212 Class, which include those

11  who are also members of the Labor Code Section 2699 Class. This settlement class is

12  based on claims made; however a minimum of $100,300 (or more than 20% of the Net

13  Fund Value allotted to the Labor Code Section 212 Class) must be paid to Class

14  Members. If the number of claims filed is lower than what is required to reach the

15  $100,300 minimum, the claimants will receive increased payments based on their *pro*

16  *rata* share of the $100,300 minimum.

17    The Parties agreed to the designation of Keller Grover LLP, the Thierman Law

18  Firm, Steven L. Miller, A Professional Corporation and the Law Offices of Scott A.

19  Miller, APC as counsel for the two settlement classes for all purposes in the case ("Class

20  Counsel"). Ex. 1 at ¶ 6(e).

21    The Parties also agreed that Class Counsel will seek, and Defendant and

22  Defendant's Counsel will not dispute, an attorneys' fee award in an amount not to

23  exceed $231,250, which is 25% of the GFV, to compensate Class Counsel for all work

24  performed and to be performed through final dismissal of the case and complete

25  implementation of the Settlement. Ex. 1 at ¶ 14(e). The Parties also agreed that Class

26  Counsel will be paid an amount not to exceed $10,000 to cover out-of-pocket costs

27

28

12

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.: C07-02715 TEH

1    incurred, subject to approval of costs by the Court. *Id.*

2        The Stipulation provides that, subject to court approval, Plaintiff Ford will

3    receive an enhancement of up to $5,000 for serving as a Class Representative. Ex. 1 at

4    ¶ 14(f)(1).   The Parties also agreed that Plaintiff will receive $10,000 in full and

5    complete settlement of all of Plaintiff's individual claims against Defendant. *Id.* at

6    ¶ 14(f)(2).

7        The Parties have selected Rosenthal & Co. as the neutral claims administrator

8    ("Claims Administrator") to perform all acts related to all payments to Plaintiff, Class

9    Members, the LWDA, and Class Counsel. Ex. 1 at ¶ 14(g). The Claims Administrator

10   will handle communications to and from Class Members, including determining (within

11   the parameters of this Agreement) a Class Member's eligibility to participate in this

12   settlement. *Id.*  The costs of Claims Administration are estimated to be $35,000, based

13   on the sending of notices to approximately 2,987 employees. *Id.*

14       Not later than thirty (30) days after receipt of notice of the Court's entry of an

15   Order of Preliminary Approval, Defendant will provide to the Claims Administrator a

16   database that contains the last known name, mailing address, social security number, and

17   period of employment of every California employee who received one or more

18   paychecks from Defendant during the period of April 23, 2007 and March 12, 2007.

19   Ex. 1 at ¶ 15.

20       Not later than forty-five (45) days after receiving the Class Members' contact

21   information from Defendant, the Claims Administrator will mail a Notice of Proposed

22   Class Action Settlement and Final Fairness and Approval Hearing ("Class Notice") to

23   the Class Members. Ex. 1 at ¶ 15. The Class Notice will include a Claim Form and an

24   explanation as to the procedure for exclusion from the Class. *Id.*  The proposed Notice

25   Packet, including the Class Notice and Claim Form to be mailed to all Class Members,

26   and the longer notice form provided to any Class Member seeking additional

27                                          13

28

information about the settlement, are attached to the Settlement Stipulation, filed herewith, as Exhibits A, B, and C respectively. *Id.* All such forms are subject to this Court's approval. If any initial mailing is returned, the Claims Administrator will search for a more current address using the Class Member's social security number and will re-mail the Class Notices within fifteen (15) days of receipt of the returned mail if a new address is identified. *Id.* at ¶¶ 15, 17-18.

Class Members will have forty-five (45) days from the date the Class Notices are mailed to postmark Claim Forms. *Id.* at ¶ 15. Class Members who object to the settlement or wish to opt out will also have forty-five (45) days from the date the Notices are mailed to postmark their written objection or request for exclusion (opt-out). *Id.* at ¶¶ 17, 21-22. The Claims Administrator will send a deficiency notice in connection with each timely submitted Claim Form that contains any irregularity subject to cure, as outlined in the Stipulation at ¶ 19. The deficiency notice will be sent within ten (10) days of the receipt of the Claim Form and will provide at least fifteen (15) days for the Class Member to postmark a response to the deficiency. Ex. 1 at ¶ 18.

Within ten (10) days prior to the Final Approval Hearing, the Claims Administrator must provide a written report to the Parties' counsel setting forth information regarding the mailings to Class Members, the number of opt-outs and the number of valid claims per settlement class. Ex. 1 at ¶ 19.

The Stipulation contains a provision (¶ 25) that the preliminary Court Order will include an injunction against any Section 212-related filings by Class Members pending final resolution of the matter in order to preserve the efficacy of the release of class claims included in the Settlement. All of the Stipulation terms, including those regarding attorneys' fees, costs, Class Representative enhancement and individual settlement, are subject to final Court approval.

14

## IV.    LEGAL ANALYSIS

The policy of the federal courts is to encourage settlement before trial.  *See Churchill Village*, 361 F.3d at 575 (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .  The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."  *Franklin*, 884 F.2d at 1225.

### A.  The Approval Process

Rule 23(e) of the Federal Rules of Civil Procedure Rule 23 requires court approval for any settlement of a class action.  Court approval of class action settlements is a two-step process: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections.  *See Manual for Complex Litigation (Third)* § 30.41.

When evaluating a proposed settlement, the court looks to the settlement as a whole, rather than its individual parts.  *Hanlon*, 150 F.3d at 1026.  If the preliminary evaluation of the proposed settlement does not disclose ground to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of plaintiffs or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.  *Manual for Complex Litigation Third*, § 30.41 (1997); *cf. Torrisi v. Tucson Elec. Power*

1  *Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district

2  court's use of a preliminary approval process).

3          At the fairness hearing when considering whether to grant final approval, the

4  court will consider a number of factors to assess the fairness and adequacy of the

5  settlement proposal:  "the strength of the plaintiffs' case; the risk, expense, complexity,

6  and likely duration of further litigation; the risk of maintaining class action status

7  throughout the trial; the amount offered in settlement; the extent of discovery completed

8  and the stage of the proceedings; the experience and views of counsel; the presence of a

9  governmental participant; and the reaction of the class members to the proposed

10  settlement."  *Hanlon*, 150 F.3d at 1026.  Not every factor will apply in every settlement

11  situation.

12          At preliminary approval however, the court does not examine these factors in

13  detail but rather "conduct[s] a cursory review of the terms of the parties' settlement for

14  the purpose of resolving any glaring deficiencies before ordering the parties to send the

15  proposal to class members."  *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS

16  GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006).  At this stage, the court is

17  determining only "whether the proposed settlement is within the range of possible

18  approval."  *Id.* at *11, quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.

19  1982); *see also*, *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1079 (same).

20  Preliminary approval is focused on whether the proposed settlement seems fair on its face

21  and is worth submitting to the class members.  *See In re Corrugated Container Antitrust*

22  *Litig.*, 643 F.2d 195, 212 (7th Cir. 1981); *see also*, *West*, 2006 WL 1652598, at *9.

23

24

25

26

27

28

**B.   The Proposed Settlement is Fair, Adequate and Reasonable and was Reached Through Arms-Length Negotiations**

Here, all of the pertinent factors weigh heavily in favor of granting preliminary approval of the proposed settlement and authorizing distribution of the proposed Notice.

Most importantly, the proposed settlement was the product of arms-length, non-collusive negotiations.  The Parties extensively negotiated the Settlement, including a full-day mediation session conducted before Mark S. Rudy, Esq., an experienced mediator, and three months of subsequent settlement discussions conducted with Mr. Rudy's assistance.  *See* Grover Decl. ¶¶ 15-17.  Indeed, given the nature of claims, tentative recovery for the Class, and other settlement terms, the fact that this Settlement was negotiated at arms-length is inescapable.

In addition, Plaintiff and the Class were represented by counsel experienced in wage and hour class actions.  *See* Grover Decl. ¶¶ 2-5, 34.  Also, the Parties exchanged significant information regarding Defendant's paycheck practices and Plaintiff's check cashing experiences through formal and informal discovery.  *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. June 1, 1995) (finding significant informal discovery exchanged between the parties supported preliminary approval).  The Parties have sufficient familiarity with the facts of the case to make an informed recommendation about the fairness of the Settlement.  Grover Decl. ¶¶ 11-17.

Finally, no Class Member has objected to the Settlement at this juncture.  After the Class Notice is mailed and Class Members are fully apprised of the settlement terms, the Court will have the opportunity to review any objections in the fairness or final approval hearing.

None of the possible red flags to preliminary approval exists here.  *See West*, 2006 WL 1652598, at *9 (Preliminary approval is proper unless "the proposed

17

settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys. . .'"); *see also, In re Initial Public Offering Secs. Litig.*, 2007 U.S. Dist. LEXIS 19632, at *22 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."); Newberg & Conte, *Newberg on Class Actions*, § 11.25 at 11-37 (3d ed. 1992). The Stipulation does not suggest an excessive fee award for Class Counsel, which would be in conflict with the aims and desires of the class. *West*, 2006 WL 1652598, at *9. It provides for the typical 25% of the gross potential settlement value. *See e.g.*, *Staton*, 327 F.3d at 952, *Hanlon*, 150 F.3d at 1029; *Torrisi*, 8 F.3d at 1377. Additionally, as the Settlement makes clear, the fee award is subject to the Court's review at the final approval stage.

Furthermore, no segments of the Class are receiving unduly preferential treatment. All Class Members are subject to the same notice and claims procedures, settlement formulas and eventual release of claims. *See* Ex. 1. Therefore, the distribution of settlement funds does not vary according to any improper variables unrelated to the relative strength of an individual Class Member's claims. With respect to the named Plaintiff's singular enhancement, this award is limited and well within the range of such awards commonly provided in litigation of this nature. *See id.* at ¶ 14(f)(1). Indeed, given the modest nature of this award, especially when compared to the overall maximum potential amount of the Settlement, there is nothing to suggest that this award is improper or undermines the apparent fairness of the Settlement.

On these points, it is important to note that the agreements concerning attorney fees and the Plaintiff's enhancement as well as all other aspects of the settlement have

18

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.: C07-02715 TEH

1    been fully disclosed to the Court.  The Parties have submitted a copy of the complete

2    Stipulation with this motion.

3         At this juncture, the Court need not answer the ultimate question:  whether the

4    settlement is fair, reasonable and adequate.  This is the question that will be considered

5    at the fairness hearing.  Instead, the Court is being asked to permit notice of the terms of

6    the settlement to be sent to the Class and to schedule the fairness hearing pursuant to

7    Federal Rule of Civil Procedure 23(e).  *See West*, 2006 WL 1652598, at *9; *see also*, 5

8    James W. Moore, *Moore's Federal Practice* § 23.85[3], at p.23-353 to 23-354 (3d ed.

9    2002).  Because this is not a request for final approval, and because the Court will have

10   the opportunity to consider the Class Member's responses to the Settlement at the final

11   fairness hearing, only a minimal showing is required at this juncture.  And, as set forth

12   above, all of the pertinent factors weigh in favor of granting preliminary approval and

13   allowing the notice and claims process to proceed.

14        While the recommendations of counsel proposing the settlement are not

15   conclusive, the Court can properly take them into account, particularly where, as here,

16   such counsel have been involved in discovery and negotiations for some period of time,

17   appear to be competent, have experience with this type of litigation, and have exchanged

18   substantial evidence with the opposing party.  *See Newberg on Class Actions, supra*,

19   § 11.47; *In re Paine Webber Ltd. P'ships Litig.* (S.D.N.Y. 1997) 171 F.R.D. 104, 125

20   ("[s]o long as the integrity of the arm's-length negotiation process is preserved,

21   however, a strong initial presumption of fairness attaches to the proposed settlement . . .

22   [citations] and 'great weight' is accorded to the recommendations of counsel, who are

23   most closely acquainted with the facts of the underlying litigation"); *see* Grover Decl.

24   ¶¶ 5, 24-26.

25        Here, both Plaintiff's counsel and Defendant's counsel have a great deal of

26   experience in class action litigation.  Moreover, counsel for both Parties conducted an

27                                          19

28        MPA ISO Motion for Prelim. Approval of Class Settlement
          Case No.:  C07-02715 TEH

extensive investigation of the factual allegations involved in this case over a several month period. The Parties have engaged in a broad exchange of documents, records and other information. Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the Parties. *See* Grover Decl. ¶¶ 11-15.

The Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk relative to class certification and the costs of pursuing such litigation. *See* Grover Decl. ¶¶ 5, 24-26, 36. The Settlement shall finally resolve all claims of the Class Members arising out of or related to Defendant's issuance of paychecks that allegedly do not conform to Labor Code § 212, its practice of charging employees fees to cash their paychecks at Defendant's stores, as well as associated penalties, interest, and attorneys' fees.

As noted, the Settlement compensates Class Members for the check cashing fees they claim to have improperly incurred during the class period and other claimed statutory penalties. Ex. 1 at ¶ 14(c) and (d). It also compensates the individual named Plaintiff by providing her with a modest enhancement for acting as class representative, thus taking into consideration the risks, time, and effort she incurred in coming forward to provide invaluable information, negotiate, and litigate this matter on behalf of all Class Members. Ex. 1 at ¶ 14(f)(1). The Settlement also resolves Plaintiff's individual claims against Defendant by providing her with a reasonable settlement amount in exchange for the release of her individual claims. Ex. 1 at ¶ 14(f)(2).

Fairness of the Settlement is further demonstrated by the uncertainty and risks to Plaintiff and Class Members involved both in not prevailing on one or more of the causes of action or theories alleged in the complaint and in non-certification. Were the Classes not certified, a number of Class Members (whose individual claims would not

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.: C07-02715 TEH

be large enough to provide incentive to litigate individually) would likely be prevented from pursuing individual actions against Defendant.  Grover Decl. ¶ 36.

Despite the asserted fairness of the settlement terms, any potential Class Member, who objects to the terms of the settlement set forth the Stipulation, has the right to submit a request for exclusion (*i.e.*, opt out) from the Settlement, pursuant to which the Class Member would retain any claim he or she may have against Defendant.

Moreover, Class Members who do not opt out may, upon providing proper notice to the Parties and the Court, may attend the final fairness and approval hearing for the purpose of objecting to one or more of the settlement terms set forth in the Stipulation.

## C.  **The Two Settlement Classes Should Be Certified for Settlement Purposes**

Plaintiff requests that the Court preliminarily certify the two Settlement Classes, and Defendant does not oppose this request based on the Parties' express agreement that certification is for settlement purposes only.  Ex. 1 at ¶ 6.  Plaintiff presents the following contentions in support of her request and submits that the Classes easily meet the requirements of numerosity, commonality, typicality and adequacy of representation required by Rule 23(a) of the Federal Rules of Civil Procedure.  *See Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1224 (9th Cir. 2007).

In support of this request, Plaintiff contends as follows:

a.  The Settlement Classes are Numerous

The proposed Settlement Classes have thousands of members.  According to Defendants' records, the Classes are comprised of approximately 2,987 current and former employees of Defendant.  There are an estimated 1,144 members of the Labor Code Section 2699 Class and an estimated 2,987 members of the Labor Code Section 212

Class.[2]   Grover Decl. at ¶¶ 29-30. Each of these proposed classes are sufficiently numerous for class certification.

    b.  <u>Common Questions of Law or Fact Among Members of the Settlement Classes Exist</u>

Commonality is satisfied if there is one issue common to Class Members. *Dukes*, 474 F.3d at 1232, citing *Hanlon*, 150 F.3d at 1019. Here, common issues as to the Class Members in both Settlement Classes include whether Defendant issued paychecks to them during the Class Period that did not meet the criteria set forth in Labor Code § 212, and whether Class Members paid check cashing fees or had holds place on their wages as a result. Grover Decl. at ¶ 31.

    c.  <u>The Proposed Class Representative's Claims are Typical of the Class Members' Claims</u>

Typicality is satisfied if the Class Representative's claims share a common element with the class claims because they arise from a common practice or course of conduct. *Dukes*, 474 F.3d at 1232 (typicality satisfied where injuries Class Members suffered were caused by defendant's alleged common practice across many Wal-Mart stores); *see also*, *Hanlon*, 150 F.3d at 1019 ("representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical"). Plaintiff Ford, the proposed Class Representative, has claims typical of the other proposed Class Members' claims.

Ford alleges that she, like the other members of the Class, worked for Defendant and received live paychecks that were drawn on an out-of-state bank without any California branches. Defendant allegedly did not make arrangements to provide Ford and other Class Members with a means to cash their paychecks in California without charge. As a result, Ford was forced to pay check cashing fees when cashing her paycheck, as

---

[2] Some individuals may be a member both Settlement Classes.

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

were the other Labor Code § 212 Class Members.  Also, because the paychecks were drawn on an out-of-state bank, Ford alleges that she and proposed Class Members could not receive their wages on demand when they presented their paychecks for cashing. Because Ford and the Class Members claim they were injured by Defendant's alleged common practice of issuing out-of-state paychecks to all California employees, the typicality requirement is satisfied in this case. *See* Grover Decl. ¶ 32.

                    d.   <u>The Adequacy of Representation Requirement is Satisfied</u>

Plaintiff Ford has also demonstrated that she will aggressively and competently assert the interests of the proposed Settlement Classes.  Furthermore, Plaintiff Ford has retained competent counsel, experienced in litigating class action claims in the employment context.  *See* Grover Decl. ¶¶ 33-34.

                    e.   <u>The Settlement Classes also Satisfy the Rule 23(b)<br>Predominance Requirement</u>

The Settlement Classes also meet the requirements of Federal Rule of Civil Procedure Rule 23(b)(3).  Rule 23(b)(3) requires common questions of law or fact to predominate over questions affecting individual Class Members, and the class action to be superior to other methods for efficient adjudication of the claims.  Here, the claims involve Defendant's common practice of issuing paychecks, which applied to all Class Members in the same manner.  Common questions of law and fact, specifically whether Defendant issued paychecks to Class Members that met the requirements of Labor Code § 212 and whether Class Members could cash the paychecks only by paying a check cashing fee, predominate over any individual questions.  Furthermore, a class action is the superior method for settling this controversy because the claims of the individual Class Members are relatively small, making it uneconomical and essentially unfeasible for them separately to litigate their claims.  *See Hanlon*, 150 F.3d at 1023 (finding class action superior where costs of individual claims would dwarf individual recovery); *see*

*also*, Grover Decl. ¶ 31.

### D.  The Proposed Class Notice to the Class Members and Notice Procedure are Adequate

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village*, 361 F.3d at 575; *Torrisi.*, 8 F.3d 1370 at 1374 (notice must present a fair recital of the subject matter and give class members an opportunity to be heard).

The proposed Class Notice advises Class Members of the essential terms of the Settlement, defines the Class, sets forth the procedure for opting out of the Class or filing objections to the Settlement and provides specifics on the date, time and place of the fairness hearing.  *See* Ex. 1 (Stipulation Exhibit A – Notice of Proposed Class Action Settlement and Final Fairness and Approval Hearing ('Class Notice")).  The Class Notice provides the details of the case and the proposed Settlement and the specific options available to Class Members.  In particular, it will inform each Class Member of the settlement formulas, thereby permitting the Class Member to make an informed decision about whether to opt out, submit a claim form or take other or no action.  Thus, the Class Notice provides the essential information that will enable Class Members to exercise their rights and make an informed decision regarding the proposed Settlement.  Although the Class Notice is more than sufficient, the Parties have arranged to have the Claims Administrator send a longer, more detailed notice to any Class Member who requests additional information.  *See* Ex. 1 (Stipulation Exhibit C).

The proposed Class Notice will be sent via first class mail to the last known address of each Class Member.  *See* Ex. 1 at ¶ 15.  Federal courts have made clear that individual mailings to each Class Member's last known address is a sufficient form of notice.  *See e.g.*, *Aguilar v. Melkonian Enters.*, 2006 U.S. Dist. LEXIS 80690, at*13

24

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

(E.D. Cal. Nov. 3, 2006) (granting preliminary approval of parties' plan to mail notice to class members' last known address as identified through Defendants' records and to re-mail any returned mail if necessary); *see also*, *White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618-620 (1997). As set forth in the Stipulation, the Parties have included provisions to ensure a reasonable effort is made to locate Class Members whose Notices are returned. Ex. 1 at ¶ 17.

The Parties have provided adequate time for Class Members to submit Claim Forms, make objections or opt out of the Class. Ex. 1 at ¶¶ 17, 21-22. For Class Members who submit a deficient Claim Form, the Parties have instructed the Claims Administrator to provide notice of the deficiency and adequate opportunity to cure the defect, if subject to cure. *Id.* at ¶ 18.

The Parties believe this notice procedure is reasonably calculated to reach Class Members, is the best notice practicable under the circumstances and will fairly apprise Class Members of the proposed settlement and their options.

## V.    CONCLUSION

Based on the foregoing, as part of its preliminary approval of the settlement, Plaintiff requests that this Court:

1.    Review the proposed Stipulation setting forth the terms of the Settlement.

2.    Consider whether the proposed Settlement preliminarily appears to be fair, reasonable and adequate, and whether the proposed Settlement Classes preliminarily appear to meet the applicable certification criteria.

3.    Appoint Plaintiff Cheryl Ford as Class Representative and Keller Grover LLP, Thierman Law Firm, Law Offices of Scott A. Miller, A.P.C. and Steven L. Miller, A PLC as Class Counsel.

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

4.      Approve Rosenthal & Co. as Claims Administrator with regard to handling the notice and claims procedure as set forth more particularly in the Stipulation.

5.      Enter an Order conditionally certifying the proposed Settlement Classes, approve the notice and claim forms to be distributed to the Settlement Classes, direct notice to be given to the Settlement Classes, and set the following schedule of settlement proceedings:

> a) Deadline for Defendant to provide the settlement Class Member data required by the Stipulation ¶ 15 to the Claims Administrator: thirty (30) days after entry of the Court's preliminarily approving the Stipulation.
>
> b) First mailing of notice to class: forty-five (45) days after entry of the Court's Order preliminarily approving the Stipulation.
>
> c) Deadline to submit requests for exclusion: forty-five (45) days after the date on which the notice of settlement is mailed to Class Members.
>
> d) Deadline to submit objections to the proposed settlement to the Court and to Plaintiff's and Defendant's counsel: forty-five (45) days after the date on which the notice of settlement is mailed to Class Members.
>
> e) Deadline to submit claim forms: forty-five (45) days after the date on which the notice of settlement is mailed to Class Members.
>
> f) Deadline to file motion for final approval shall be ten (10) days prior to the scheduled date of the final fairness and approval hearing.
>
> g) Setting the date of the final fairness and approval hearing

See Grover Decl., Ex. 1 at ¶¶ 15-22.

6.      Enjoin potential settlement Class Members from instituting or prosecuting any claims released in the Settlement against Defendant or any other parties released by the settlement in any State Court or before the State Labor Commissioner pending final approval of the Settlement.

---

26

MPA ISO Motion for Prelim. Approval of Class Settlement
Case No.:  C07-02715 TEH

1    Dated: March 31, 2008                    Respectfully submitted,

2                                             KELLER GROVER LLP

3
                                          By:_____/s/_____
4                                             ERIC A. GROVER

5                                             Attorneys for Plaintiff CHERYL FORD
6                                             and proposed Class Counsel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                     27

28          MPA ISO Motion for Prelim. Approval of Class Settlement
                       Case No.:  C07-02715 TEH