ERIC A. GROVER, Esq. (SBN 136080)
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, CA  94107
Tel. (415) 543-1305
Fax: (415) 543-7861
eagrover@kellergrover.com

Attorneys for Plaintiff
CHERYL FORD and
CLASS COUNSEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL FORD, on behalf of herself, the general public, and as an "aggrieved employee" under the California Labor Code Private Attorneys General Act,<br><br>          Plaintiff,<br><br>     v.<br><br>PILOT TRAVEL CENTERS LLC and DOES 1 through 10 inclusive,<br><br>          Defendants. | Case No.: C07-02715 TEH<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPLICATION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, CLASS REPRESENTATIVE ENHANCEMENT AND INDIVIDUAL SETTLEMENT**<br><br>Date:          September 22, 2008<br>Time:          10:00 a.m.<br>Courtroom:  12 (19th Floor)<br>Judge:        Hon. Thelton E. Henderson |

**TO THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 22, 2008 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 12 of the above-captioned Court, the Honorable Thelton E. Henderson presiding, Plaintiff Cheryl Ford will move and hereby does move for an Order (1) granting final approval of this class action settlement, (2) granting Class Counsel's application for attorneys' fees in the amount of $231,250, (3) awarding Class Counsel's costs in the amount of $6,795.98, (4) approving the enhancement in the amount of $5,000 for the Class Representative, (5) approving the settlement of the named Plaintiff's individual claims against Defendant in the amount of $10,000, and (6) approving claims' administration fees of up to $35,000.  This application is made pursuant to Federal Rule of Civil Procedure 23(e), which requires court approval of the settlement of class actions.

This Motion will be based on the Memorandum of Points and Authorities, the Joint Stipulation of Settlement and Release Between Plaintiff and Defendant (the "Stipulation"), the Declaration of Eric A. Grover ("Grover Decl."), the Declaration John Keane of Rosenthal & Co., the Declaration of Plaintiff Cheryl Ford, and such evidence or oral argument as may be presented at the hearing, and on the complete records and file herein.

Date: September 8, 2008                     KELLER GROVER LLP


                                            _____/s/_____
                                            ERIC A. GROVER
                                            Attorneys for Plaintiff Cheryl Ford
                                            and Class Counsel

1

**TABLE OF CONTENTS**

I.       INTRODUCTION ............................................................................................... 1

II.      PROCEDURAL HISTORY AND SUMMARY OF CLAIMS .......................... 3

        A.   SUMMARY OF THE SETTLEMENT TERMS ............................................. 6

             1.   Benefits to the Settlement Class Members ...................................... 6

             2.   Other Settlement Terms ................................................................... 7

        B.   PRELIMINARY APPROVAL, NOTICE AND THE CLAIMS  PROCESS ................. 9

III.     ARGUMENT ................................................................................................... 9

        A.   THE NOTICE WAS THE BEST PRACTICABLE NOTICE UNDER THE
             CIRCUMSTANCES ......................................................................................... 10

        B.   FINAL SETTLEMENT APPROVAL IS WARRANTED ............................................ 11

             1.   Each of the Relevant Criteria Supports Final Approval ............................. 12

                  A.   The strength of plaintiff's case turns on an untested area of
                       law creating significant risks to plaintiff and the classes .... 12

                  B.   The complexity, expense and likely duration of continued
                       litigation weighs in favor of final approval .............................. 13

                  C.   The value of the settlement favors final approval ................. 13

                  D.   Disclosure of documents and data demonstrating the
                       strengths and weaknesses of this action was completed prior
                       to entering into the settlement .................................................... 14

                  E.   The experience and views of counsel favor final approval .... 14

                  F.   Class members' positive reaction to the settlement favors
                       final approval .............................................................................. 15

        C.   THE SETTLEMENT CLASSES MEET THE RULE 23 CLASS CERTIFICATION
             REQUIREMENTS ........................................................................................... 15

             1.   The Settlement Classes Satisfy Numerosity ................................... 15

2.   THE SETTLEMENT CLASSES SHARE COMMON QUESTIONS OF LAW AND FACT ........ 16

3.   THE CLASS REPRESENTATIVE'S CLAIMS ARE TYPICAL OF THE PROPOSED CLASS MEMBERS ................................................................................................ 16

4.   THE CLASS REPRESENTATIVE AND HER CHOSEN COUNSEL ARE ADEQUATE ........... 16

5.   THE SETTLEMENT CLASSES ALSO SATISFY RULE 23(B) REQUIREMENTS FOR CLASS CERTIFICATION ................................................................................ 17

D.   CLASS COUNSEL REQUEST A FEE AWARD UNDER THE PERCENTAGE OF COMMON FUND DOCTRINE ................................................................. 17

1.   THE REQUESTED FEE MATCHES THE BENCHMARK IN THIS CIRCUIT ........................ 17

2.   THE CIRCUMSTANCES OF THIS CASE SUPPORT A 25% FEE AWARD ........................ 18

A.   THE CONTINGENT NATURE OF THIS CASE ............................................ 19

B.   THE EXPERIENCE, REPUTATION, AND ABILITY OF COUNSEL, AND THE SKILL THEY DISPLAYED IN LITIGATION ................................................ 19

C.   THE RESULTS ACHIEVED ................................................................... 20

D.   SIZE OF THE GROSS FUND VALUE ...................................................... 21

E.   PRECLUSION OF OTHER EMPLOYMENT .................................................. 21

3.   NO CLASS MEMBER OBJECTED TO THE ATTORNEY FEE AWARD ............................ 21

E.   CLASS COUNSEL'S REQUEST FOR COSTS IS ALSO REASONABLE ................ 21

F.   CLASS REPRESENTATIVE'S ENHANCEMENT IS ALSO REASONABLE .......... 22

G.   ADDITIONAL SETTLEMENT OF NAMED PLAINTIFF'S INDIVIDUAL CLAIMS 23

H.   COURT APPROVAL OF THE PAGA PENALTY PORTION OF THE SETTLEMENT ................................................................................ 24

I.   THE COURT SHOULD APPROVE THE PAYMENT TO ROSENTHAL CLAIMS ADMINISTRATION LLC .................................................................. 24

IV.   CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

## Federal Cases

*Aguilar v. Melkonian Enters.*,
    2006 U.S. Dist. LEXIS 80690 (E.D. Cal. Nov. 3, 2006) ..................................................... 10

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................................. 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................................................... 17, 18

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................... 1, 9, 10, 12

*Dukes v. Wal-Mart, Inc.*,
    474 F.3d 1214 (9th Cir. 2007) ............................................................................................ 16

*Franklin v. Kaypro*,
    884 F.2d 1222 (9th Cir. 1989) ........................................................................................ 9, 10

*Glass v. UBS Financial Services, Inc.*,
    Case No. C-06-4068 MMC, 2007
    WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................................................... 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d at 1011 (9th Cir. 1998) ................................................................................ *passim*

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .................................................................................................. 21

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................... 17

*In re Immune Response Sec. Litig.*,
    497 F.Supp.2d 1166 (S.D.Cal.2007) ................................................................................... 22

*In re Omnivision Technologies, Inc.*,
    2008 WL 123936 (N.D.Cal. Jan. 09, 2008) ....................................................................... 22

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................................... 19

*In re United Energy Corp. Sec. Litig.*,

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

    1989 WL 73211 (C.D. Cal. 1989)........................................................................ 22

*Linney v. Cellular Alaska Partnership,*
    1997 WL 450064 (N.D.Cal. July 18, 1997).......................................................... 22

*lngram v. The Coca-Cola Co.,*
    200 F.R.D. 685 (N.D. Ga. 2001)..................................................................... 22, 23

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 17, 18

*Swedish Hospital Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) ............................................................................... 18

*Torrisi v. Tuscon Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ................................................................................ 10

*Van Vranken v. Atlantic Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 3, 21, 23

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir.2002) ....................................................................... 18, 19

*White v. Nat'l Football League,*
    41 F.3d 402 (8th Cir. 1994) ................................................................................ 11

*Whiteway v. FedEx Kinkos Office & Print Services, Inc.,*
    No. C 08-2320 SBA, 2007 WL 4531783
    (N.D. Cal. Dec. 17, 2007) ................................................................................... 23

**Federal Statutes**

28 U.S.C. § 1920........................................................................................................ 22

28 U.S.C. §1715(b) ...................................................................................................... 6

28 U.S.C. §1715(d) ...................................................................................................... 6

**State Statues**

California Business and Professions Code §§ 17200, *et seq.* ...................................... 3, 4

California Labor Code § 212 ............................................................................... *passim*

California Labor Code § 2699 ............................................................................. *passim*

**Federal Rules**

Federal Rule of Civil Procedure 23 ............................................................. *passim*

Federal Rule of Civil Procedure 54(d) .......................................................... 22

**Treatises**

*Manual for Complex Litigation, Fourth* (4th ed. 2004) § 21.632-34 ............................................... 11

Newberg, *Attorney Fee Awards*, § 2.19 (1987) ............................................. 22

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

By this motion, Plaintiff Cheryl Ford ("Plaintiff") and the members of the two settlement classes (collectively "Class Members", "Class" or "Settlement Class") seek final approval of the class action settlement reached with Defendant Pilot Travel, Inc. ("Defendant" or "Pilot").   In addition, Plaintiff moves for an award of attorneys' fees and costs, approval of the claims administrator's fees, approval of the enhancement award to the Class Representative, and approval of the individual settlement payment for Plaintiff's release of her individual claims.

Subject to Court approval, Plaintiff has settled the Released Claims of the Class Members as defined in the Joint Stipulation of Settlement and Release Between Plaintiff and Defendant (the "Stipulation") against Defendant for up to $925,000.  *See* Declaration of Eric A. Grover ("Grover Decl."), Exhibit ("Ex.")[1] A (Stipulation).  This class action settlement ("Settlement") resolves the named Plaintiff's and Class Members' pending Released Claims[2] against Defendant, as well as the named Plaintiff's individual claims.

As discussed below, the proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable.   Ex. A; *see Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).   The positive response of the Class Members to the Settlement provides strong support that final settlement approval is appropriate. To date, 521 Class Members have submitted approved claim forms seeking to participate in the Settlement.  Declaration of John Keane of Rosenthal & Co. ("Rosenthal"), the claims administrator for this action ("Keane Decl.") at ¶ 16.  Notably, not a single Class Member has objected to any of the terms of the Settlement and only five Class Members have chosen to opt out.  *See id*. at ¶¶ 14-15; Grover Decl. at ¶ 24.

If the Settlement receives final approval, the State of California's Labor and Workforce Development Agency ("LWDA") will receive $93,375 for education and enforcement of labor

---

[1]  All "Ex." references are to the exhibits attached to the Declaration of Eric A. Grover in Support of the Motion for Final Approval of Class Settlement submitted herewith, unless otherwise noted.
[2]  All capitalized terms are defined in the Stipulation and are incorporated by reference herein.

laws. Ex. A at ¶ 14(c)(1). The Settlement allocates $33,125 for the members of the Labor Code Section 2699 Class. *Id.* Based on the approved claims submitted by Class Members to date, approximately 271 members of the Labor Code Section 2699 Class have submitted valid claims and will receive monetary settlement awards calculated on a prorated basis based on each Qualified Claimant's number of pay periods during the applicable class period. *See* Keane Decl. at ¶ 17; Ex. A at ¶ 14(c)(1). All $33,125 allocated to the Labor Code Section 2699 Class will be distributed to the Qualified Claimants. Ex. A. at ¶ 14(c)(1).

The Settlement also allocates up to $501,500 for the Labor Code Section 212 Class. Ex. A at ¶ 45(d)(1). A minimum of 20% of the amount allocated to this Class will be distributed to Qualified Claimants. Based on the claims made to date, approximately 478 members of the Labor Code Section 212 Class will receive monetary settlement payments.[3] *See* Keane Decl. at ¶ 17. In addition, as part of the Settlement, Defendant will notify its current and future California employees of the free check cashing services that are now in place for them. Ex. A at ¶ 7. Because the Settlement achieves outstanding results for the two Settlement Classes, all of Defendant's current and future employees and the State of California, Plaintiff respectfully requests, on behalf of the Classes, that the Court approve the Settlement as fair, adequate, and reasonable, and enter judgment.

Plaintiff also moves for an order approving an attorneys' fee award of $231,250 and approving reimbursement of costs of $6,795.98 to Class Counsel as part of the Settlement in this case. Ex. A at ¶ 14(e). The attorneys' fees request equals 25% of the total value of the settlement of $925,000. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1011, 1059 (9th Cir. 1998) (Ninth Circuit benchmark for acceptable fee award is 25% of total settlement value). Class Counsel's request for an award of attorneys' fees is reasonable and appropriate in light of the outstanding work performed by Class Counsel in the case, the contingent nature of this action, and the results achieved under the Settlement. Grover Decl. at ¶¶ 51-55. Class Counsel's request for $6,795.98

---

[3] Some individuals may be members of both settlement classes.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

1   in costs is also reasonable as all costs incurred were necessary to litigate this case.  Grover Decl. at

2   ¶¶ 56-57.

3         Plaintiff also requests the Court confirm the enhancement award agreed to be paid to

4   Plaintiff Ford in the amount of $5,000.  *See* Ex. A at ¶ 14(f)(1).  The amount proposed to be

5   awarded to the representative Plaintiff is fair and reasonable.  Courts approve incentive awards to

6   plaintiffs when justified and appropriate to compensate plaintiffs for their time, effort, and

7   inconvenience.  *See e.g.*, *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

8   1995).  In addition, the Stipulation provides for the settlement of Plaintiff Ford's individual claims

9   against Defendant.  Plaintiff Ford will receive $10,000 in exchange for her release of individual

10  claims.  *See* Ex. A at ¶ 14(f)(2).  Plaintiff seeks the Court's approval of the settlement of her

11  individual claims against Defendant.

12  **II.      PROCEDURAL HISTORY AND SUMMARY OF CLAIMS**

13        On April 23, 2007, Plaintiff filed a class action complaint in the Superior Court of the

14  County of Alameda, that was subsequently removed to the United States District Court for the

15  Northern District of California.  In the complaint, Plaintiff alleges, among other things, that

16  Defendant issued paychecks to its California employees that fail to conform to the requirements of

17  California Labor Code § 212 and that Defendant charged its own employees a check cashing fee in

18  violation of Labor Code § 221.  Plaintiff asserts causes of action under Labor Code §§ 212, 221

19  and 2699 and Business & Professions Code §§ 17200, *et seq.*  Plaintiff seeks damages and

20  restitution for check cashing fees, statutory penalties, injunctive relief, and attorneys' fees and

21  costs on behalf of herself and a proposed class.  Grover Decl. at ¶ 7.

22        Specifically, Plaintiff alleges that, until March 12, 2007,[4] Defendant issued paychecks that

23  failed to state the name and address of an established place of business in California where

24  employees could cash their checks for free.  Further, Plaintiff alleges that Defendant did not make

25

26  _____

    [4] On or around March 12, 2007, Defendant began using paychecks issued by Wells Fargo, which
27  has retail branches in California.  Defendant entered into an agreement with Wells Fargo to pay for
    the check cashing fees incurred when its employees presented paychecks to be cashed.  The new
28  paychecks provide that they can be cashed free of charge at a Wells Fargo branch.

1   any arrangements for its employees to cash their paychecks at a location within the state without a

2   fee.  As a result, Plaintiff alleges that she and the Labor Code § 212 Class members were charged a

3   fee to cash their paychecks at banks or other check cashing facilities in California and/or had holds

4   placed on their paychecks delaying their ability to obtain their wages.  Grover Decl. ¶ 8.

5          In addition, Plaintiff alleges that she and a sub-class of employees also were charged check

6   cashing fees by Defendant when they cashed their paychecks at Defendant's Pilot Travel Centers,

7   allegedly violating Labor Code § 221.  Plaintiff also alleges that Defendant's practice of issuing

8   such paychecks and taking a portion of employees' wages in the form of check cashing fees were

9   unfair business practices in violation of California  Business & Professions Code §§ 17200, *et seq*.

10  Grover Decl. ¶ 9.

11         In connection with these allegations, Plaintiff asserted causes of action under Labor Code

12  §§ 212, 221 and 2699 and Business & Professions Code §§ 17200, *et seq.*, seeking damages and

13  restitution for check cashing fees, statutory penalties, injunctive relief, and attorneys' fees and

14  costs.  Grover Decl. ¶ 10.

15         Defendant has denied all of these allegations and denies any liability to Plaintiff or the

16  proposed class members.  To date, no class has been certified and no court has made any findings

17  that Defendant engaged in any wrongdoing or wrongful conduct.  Grover Decl. ¶ 11.

18         The Parties exchanged a substantial amount of informal discovery.  As part of the

19  information exchanged, Defendant provided information concerning the number of paychecks

20  issued to its California employees dating from April 23, 2003 to March 11, 2007.  Defendant

21  provided information concerning the number of employees who received such paychecks.

22  Defendant also provided examples of checks and relevant information regarding the manner in

23  which the checks were negotiated.  Grover Decl. ¶ 12.

24         Defendant also provided information that, from April 1, 2005 through March 11, 2007,

25  Defendant charged its employees $2.00 when cashing a check at any of the Pilot stores.  Defendant

26  estimates that, during that time period, employees cashed approximately 53% of the live

27  paychecks issued at Pilot Stores.  Thus, the Parties were able to determine that approximately

28

36,289 paychecks were cashed by employees at Defendant's stores at a rate of $2.00 per check. Grover Decl. at ¶ 13.

All of the following information were produced by Defendant and reviewed by proposed Class Counsel in advance of reaching a tentative settlement:

- Estimates that Defendant issued approximately 68,469 live paychecks to approximately 2,987 of its California employees between April 23, 2003 and March 11, 2007 (the "Class Period").

- Estimates that Defendant issued approximately 15,305 live paychecks to approximately 1,144 of its California employees between April 23, 2006 and March 11, 2007.

- Defendant charged its employees $2.00 per check cashed at Defendant's Pilot stores.

- With information available only from April 1, 2005 through March 11, 2007, estimates that 53% of the live paychecks issued during the Class Period were cashed in Pilot Stores and approximately 36,747 checks were chased during that time period, meaning Pilot employees paid Defendant approximately $73,494.86 in check cashing fees when negotiating their paychecks.

- The paychecks issued during the Class Period were drawn on Amsouth PTC Bank and Wachovia Bank, neither of which had retail branches in California during the class period.

- Information regarding the manner in which the checks had been negotiated.

Grover Decl. ¶ 14.

Plaintiff's counsel assessed Defendant's information and engaged in detailed discussions with Defendant's counsel regarding different settlement scenarios. Through this informal discovery and discussions, Defendant and Plaintiff exchanged information and documentation as well as apprised each other of their respective factual contentions, legal theories, and defenses. Both Parties were able to conduct a thorough investigation into the claims asserted in the complaints. In particular, the Parties were able to make informed assessments of the probability of certifying a class action, a critical hurdle in an action involving relatively small individual claims. Additionally, during the course of their information exchange, the Parties engaged in extensive good faith, arms-length negotiations including information exchanges, telephone conferences, and

1    correspondence aimed at settling their dispute.  In short, for a period of several months, the Parties

2    engaged in extensive investigation and discovery into the factual and legal claims presented in the

3    Complaint.  Grover Decl. ¶ 15.

4        Armed with extensive data regarding Defendant's practice of issuing paychecks to its

5    California employees, the Parties were able to engage in informed negotiations of possible

6    settlement alternatives, which included sharing their respective factual and legal positions.

7    During the course of these exchanges of information, the Parties engaged in extensive good faith,

8    arms-length negotiations, including telephone conferences, correspondence, and formal mediation,

9    all in an effort to settle their dispute.  After a full-day mediation session and three months of

10   follow-up negotiations with the mediator's assistance, the Parties were able to reach a tentative

11   resolution.  Grover Decl. at ¶ 17.  The Parties set forth the all of the terms of the settlement in the

12   Stipulation attached as Exhibit A to the Grover Declaration.

13       On April 15, 2008, the Court granted preliminarily approval of the Parties' proposed

14   settlement.  Grover Decl. at ¶ 18, Ex. B (Preliminary Approval Order). On April 22, 2008 pursuant

15   to 28 U.S.C. §1715(b), Defendant sent notices to the appropriate State and Federal officials of the

16   proposed class action settlement.   Grover Decl. at ¶ 19; *see also*, Docket No. 24 (Proof of

17   Notification).   Because more than 90 days have passed since the date of the notice and no

18   objections have been received from any officials, a final order and judgment may now be entered.

19   *See* 28 U.S.C. §1715(d); *see also*, Grover Decl. at ¶ 18.

20       Pursuant to the Court's preliminary order, on May 30, 2008, Rosenthal mailed the Notice

21   to 2,877 Class Members.  Keane Decl. at ¶ 8.  As of September 3, 2008, there were 521 claims

22   filed.  *Id.* at ¶ 16.  No Class Member objected to the Settlement, and only five Class Members

23   chose to opt out.  *Id.* at ¶¶ 14-15; *see also*, Grover Decl. at ¶¶ 23.

24       **A.  Summary of the Settlement Terms**

25              **1.  Benefits to the Settlement Class Members**

26       The Stipulation provides for two settlement classes.  One settlement class (the "Labor Code

27   Section 2699 Class") is composed of "[a]ll California employees of Defendant who received one

28

1    or more live paychecks from Defendant between April 23, 2006 and March 11, 2007." Ex. A at

2    ¶ 3. The other settlement class ("Labor Code Section 212 Class") is composed of "[a]ll California

3    employees of Defendant who paid a fee to Defendant or a third-party to cash one or more live

4    paychecks received from Defendant between April 23, 2003 and March 11, 2007." *Id.* Members

5    of the Labor Code Section 2699 Class may also be members of the Labor Code Section 212 Class.

6    The members of the two settlement classes are referred to collectively as the "Class Members,"

7    and the two classes are referred to collectively as the "Class." For settlement purposes only, the

8    Parties have stipulated that the two settlement classes satisfy the requirements of Federal Rule of

9    Civil Procedure 23 for class certification. *Id.* at ¶ 6.

10        The Parties have agreed that Defendant will pay up to, but not to exceed, $925,000, which

11   is referred to as the "Gross Fund Value" or "GFV." Ex. A at ¶ 12. The Stipulation allocates

12   $132,500 for the claims of the Labor Code Section 2699 Class. *Id.* at ¶ 14(c)(1). Pursuant to

13   Labor Code § 2699(i), 75% of that amount ($93,375) will be distributed to the California Labor

14   and Workforce Development Agency ("LWDA") for enforcement of labor laws and education of

15   employers. *Id.* All of the remaining 25% ($33,125) will be distributed to Section 2699 Settlement

16   Class members. *Id.* The entire $33,125 will be paid out to Section 2699 Class Members who file

17   timely and valid claims. As of September 3, 2008, 271 Section 2699 Class Members had made

18   approved claims. Keane Decl. at ¶ 17.

19        The Stipulation allocates up to $501,500 for the claims of the Labor Code Section 212

20   Settlement Class to be distributed to those Class Members who submit timely claim forms. Ex. A

21   at ¶¶ 14 (d). This settlement class is based on claims made; however the Settlement requires that a

22   minimum of $100,300 (or 20% of the amount allotted to this Class) must be paid to the 478 Labor

23   Code Section 212 Class Members who have filed claims. Ex. A at ¶ 14(d)(1); Keane Decl. at ¶ 17.

**2. Other Settlement Terms**

24

25        The Parties agreed to the designation of Keller Grover LLP, the Thierman Law Firm,

26   Steven L. Miller, A Professional Corporation and the Law Offices of Scott A. Miller, APC as

27

28

counsel for the two Settlement Classes for all purposes in the case ("Class Counsel"). Ex. A at ¶ 6(e).

The Parties also agreed that Class Counsel will seek, and Defendant and Defendant's Counsel will not dispute, the Court's approval of an attorneys' fee award in an amount not to exceed $231,250 (equivalent to 25% of the total settlement value) to compensate Class Counsel for all work performed and to be performed through final dismissal of the case and complete implementation of the Settlement. Ex. A at ¶ 14(e). The Parties also agreed that Class Counsel will be paid an amount not to exceed $10,000 to cover out-of-pocket costs incurred, subject to verification of costs by the Court. *Id.* The actual costs incurred plus anticipated costs to finalize the settlement are $6,795.98. Grover Decl. at ¶ 55-56. The $3,204.02 remaining in the funds set aside for counsel's costs shall be paid to the Labor Code Section 212 portion of the settlement distribution as provided in the Stipulation. Ex. A at ¶ 14(e).

The Stipulation also provides that, subject to the Court's approval, Plaintiff Ford will receive an enhancement of up to $5,000 for serving as a Class Representative. Ex. A at ¶ 14(f)(1). In addition, the Parties agreed that Plaintiff Ford will receive $10,000 in full and complete settlement of all of her individual claims against Defendant. *Id.* at ¶ 14(f)(2).

The Parties selected Rosenthal as the neutral claims administrator to perform all acts related to all payments to Plaintiff, Class Members, the LWDA, and Class Counsel. Ex. A at ¶ 14(g). Rosenthal handled all communications to and from Class Members, including determining (within the parameters of the Settlement) a Class Member's eligibility to participate in this Settlement. *Id.* The Stipulation allocated up to $35,000 for claims administration fees, based on the sending of notices to over 2,800 employees. *Id.* Rosenthal estimates that its actual fees will be between $30,000 and $35,000. Keane Decl. at ¶ 20.

### B.  Preliminary Approval, Notice and the Claims Process

On March 31, 2008, Plaintiff and Defendant moved the Court for an order preliminarily approving the Settlement and provisionally certifying the Settlement Classes.  By Order dated April 15, 2008, the Court granted the joint motion and provisionally certified the Settlement Classes, finding that the Settlement was in the range of reasonableness and fairness that could ultimately be given final approval.  *See* Ex. B.  The Court also approved the distribution of the Notice of Proposed Class Action Settlement and Final Fairness and Approval Hearing ("Notice") to Class Members.  Ex. B.

Pursuant to the Court's preliminary approval order, on May 30, 2008, Rosenthal mailed the Notice and Claim Form packets containing the notice of the terms of the Settlement – including the terms relating to attorneys' fees and costs – and individualized claim forms to the Class Members. Keane Decl. at ¶ 8.  Class Members were given 60 days after the Notice was mailed to object to or opt out of the Settlement or to file claims. Ex. B.

As of the filing of this Motion, 521 Class Members have submitted claim forms.  Keane Decl. at ¶ 16.  Of the 521 claims, eight were filed after the original deadline, however the Parties agreed to accept late claims.  Keane Decl. at ¶ 16; Grover Decl. at ¶ 22.  Also, there were 72 claims that were initially deficient. Keane Decl. at ¶ 16.  Rosenthal has been working to resolve those deficiencies.  *Id.*    Only five Class Members have requested to be excluded from the Settlement, and no Class Member has objected to the Settlement.  *Id.* at ¶¶ 14-15.

### III.    ARGUMENT

The policy of the federal courts is to encourage settlement before trial.  *See Churchill Village*, 361 F.3d at 575 (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement); *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).  "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .  The economics of litigation are such that pretrial settlement may be more advantageous

1    for both sides than expending the time and resources inevitably consumed in the trial process."

2    *Franklin*, 884 F.2d at 1225.

3        **A.  The Notice was the Best Practicable Notice Under the Circumstances**

4        Federal Rule of Civil Procedure 23(c)(2) requires that the class members receive "the best

5    notice practicable under the circumstances."  Fed. R. Civ. P 23(c)(2); *see also*, *Churchill Village*,

6    361 F.3d at 575.  "Notice is satisfactory if it 'generally describes the terms of the settlement in

7    sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

8    heard.'"  *Churchill Village*, 361 F.3d at 575; *Torrisi v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1374

9    (9th Cir. 1993) (notice must present a fair recital of the subject matter and give class members an

10   opportunity to be heard).

11       On April 15, 2008, the Court granted preliminary approval of the Settlement and

12   authorized the distribution of the proposed Notice.  *See* Ex. B (Order); *see also*, Keane Decl., Ex.

13   A (Short-Form Notice).  The court-approved Notice advised Class Members of the essential terms

14   of the Settlement, defined the Settlement Classes, set forth the procedure for opting out of the

15   Classes or filing objections to the Settlement and provided specifics on the date, time and place of

16   the fairness hearing.  *See* Keane Decl., Ex. A (Short-Form Notice).  The Notice also provided the

17   details of the case and the proposed settlement and the specific options available to Class

18   Members.  In particular, it informed each Class Member of the settlement formulas, thereby

19   permitting the Class Member to make an informed decision about whether to opt out, submit a

20   claim form or take other or no action.  Thus, the Notice provided the essential information that

21   enabled Class Members to exercise their rights and make informed decisions regarding the

22   proposed settlement.

23       On May 30, 2008, Rosenthal, the claims administrator, sent the Notice and Claim Form

24   packets via first class mail to the last known address of each Class Member.  Keane Decl. at ¶ 8.

25   Federal courts have made clear that individual mailings to each Class Member's last known

26   address is a sufficient form of notice, particularly where efforts are made to locate new addresses

27   for any undelivered notice packets.  *See e.g., Aguilar v. Melkonian Enters.*, 2006 U.S. Dist. LEXIS

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

1  80690, at*13 (E.D. Cal. Nov. 3, 2006) (granting preliminary approval of parties' plan to mail

2  notice to class members' last known address as identified through Defendants' records and to re-

3  mail any returned mail if necessary); *see also, White v. Nat'l Football League*, 41 F.3d 402, 408

4  (8th Cir. 1994), *abrogated on other grounds by Amchem Products, Inc. v. Windsor*, 521 U.S. 591,

5  618-620 (1997). Rosenthal made reasonable efforts to locate any Class Members whose notice

6  packets were returned.  Keane Decl. at ¶¶ 9-13.

7      The notice procedure also provided adequate time for Class Members to submit claim

8  forms, make objections or opt out of the Settlement Class.  Ex. A at ¶¶ 17, 21-22.  For Class

9  Members who submitted a deficient claim form, the Claims Administrator provided notice of the

10  deficiency and adequate opportunity to cure the defect, if subject to cure.  Keane Decl. at ¶ 16.

11      The Notice approved by the Court at the preliminary approval stage was the best notice

12  practicable under the circumstances and fairly apprised Class Members of the proposed settlement

13  terms and their options.

14                **B.  Final Settlement Approval is Warranted**

15      Pursuant to Federal Rule of Civil Procedure 23(e), the court must approve any proposed

16  class settlement.  Court approval of class action settlements requires the following steps:

17      (1)  Preliminary approval of the proposed settlement at a preliminary hearing;

18      (2)  Dissemination of mailed and/or published notice of the settlement to all affected

19          Class members; and

20      (3)  A "formal fairness hearing," or final settlement approval hearing, at which Class

21          members may be heard regarding the settlement, and at which evidence and argument

22          concerning the fairness, adequacy, and reasonableness of the settlement may be

23          presented.

24  *Manual for Complex Litigation, Fourth* (4th ed. 2004) ("*Manual*") § 21.632-34.

25      The first two steps of this process are now complete.  The first step was completed on April

26  15, 2008, when this Court conducted a hearing and granted preliminary approval to the Settlement.

27  Ex. B.  In doing so, the Court determined that the Settlement was within the range of possible final

28

1  approval and that notice to the Class Members of the Settlement's terms and of the scheduling of

2  the formal fairness hearing should be distributed.  Ex. B.

3         The second step in the class action settlement approval process, the dissemination of the

4  Notice, is complete as well.  In accordance with the Court's preliminary approval order, the Parties

5  worked with Rosenthal to implement the Court-approved notice program, which employed the best

6  practicable means to disseminate to all Class Members notice of the Settlement terms as well as

7  the date and time of the final approval hearing.  Pursuant to the Court's order, Rosenthal sent the

8  Notice to Class Members on May 30, 2008.

9         The last step in the class action settlement approval process is the final approval hearing at

10  which the Court shall determine whether the Settlement is fair, adequate, and reasonable.  Fed. R.

11  Civ. P. 23(e)(2).  At the final approval hearing, scheduled on September 22, 2008, Class Members

12  will have the opportunity to be heard regarding the Settlement, and Class Counsel will present

13  evidence and argument in support of the Settlement.  At the conclusion of the final approval

14  hearing, the Court will decide whether to grant final approval of the Settlement and whether to

15  enter a final order and judgment.

16                    **1.  Each of the Relevant Criteria Supports Final Approval**

17         When evaluating the fairness, reasonableness and adequacy of a settlement, courts consider

18  some or all of the following factors: the strength of the plaintiff's case; the risk, expense,

19  complexity and likely duration of further litigation; the amount offered in the settlement; the extent

20  of discovery completed and the stage of the proceedings; the experience and views of counsel; and

21  the reaction of the class members to the proposed settlement.  *Churchill Village*, 361 F.3d at 576;

22  *Hanlon*, 150 F.3d at 1026.  In addition, the Court must determine that the settlement was not the

23  product of collusion between the negotiating parties.  *Churchill Village*, 361 F.3d at 576; *Hanlon*,

24  150 F.3d at 1026.

25                 **a.  The Strength of Plaintiff's Case Turns on an Untested Area of**
                      **Law Creating Significant Risks to Plaintiff and the Classes**

26

27         A critical factor in determining the strength of Plaintiff's case is the fact that there is very

28  little authority on the application of Labor Code § 212 in the present context.  Grover Decl. at ¶ 52

1    (to Counsel's knowledge, there are only two published decisions in other cases on Labor Code

2    § 212 in this context, and Class Counsel represented plaintiffs in both cases). Plaintiff maintains

3    that she would succeed at trial. Defendant, on the other hand, maintains that it would succeed in

4    defeating Plaintiff's claims, either through summary judgment or in front of the trier of fact.

5    However, given the overall lack of authority on the disputed issues here, there is uncertainty as to

6    how the question of Defendant's liability under Labor Code § 212 would be resolved at trial.

7        Such uncertainty regarding the interpretation of § 212 supports that the Settlement is a

8    good compromise for the absent Class Members. The Class Members submitting valid claims will

9    receive monetary benefits and avoid the risks of proceeding with a trial on an untested theory of

10   liability. *See* Grover Decl. at ¶¶ 25-30.

### b.  The Complexity, Expense and Likely Duration of Continued Litigation Weighs in Favor of Final Approval

12       Employment class action cases are expensive and time-consuming to prosecute. However,

13   this case presents a more difficult situation than most given the lack of legal authority surrounding

14   the interpretation of Labor Code § 212. Continued litigation of this action against Defendant

15   would likely be complex and expensive, due to the size of the class and the nature of the claims.

16       Furthermore, the Settlement avoids the need for a contested class certification motion that

17   would be time consuming and costly for Plaintiff to file, Defendant to oppose, and the Court to

18   decide. In addition, if the Court were to deny such a motion for class certification, Class Members

19   would be left without a group remedy, and the issues presented here would need to be litigated

20   individually in a piecemeal, costly, and time-consuming fashion. The Settlement also avoids a

21   lengthy trial or trials that likely would have involved testimony by numerous witnesses and

22   experts. *See* Grover Decl. at ¶¶ 25-30.

### c.  The Value of the Settlement Favors Final Approval

24       Under the Settlement, Defendant has agreed to pay up to a total of $925,000 (including

25   attorneys' fees and costs). Ex. A. at ¶ 12. This Settlement provides for substantial benefits in

26   terms of a cash settlement payable in one payment and paid not long after the commencement of

27   the litigation. The Settlement is enhanced by the fact that there are no non-cash benefits to the

28

settlement such as paid time off or coupons.  The amounts for which Class Members are eligible are not only in-line with other similar settlements, but also commensurate with the value of the claim adjusted for risk.   These are substantial benefits in relation to the claimed harm suffered by the Class.   Grover Decl. at ¶¶ 25-30.   Accordingly, the monetary recoveries justify the final approval of the Settlement.

### d. Disclosure of Documents and Data Demonstrating the Strengths and Weaknesses of this Action was Completed Prior to Entering into the Settlement

The Settlement was only after the Parties exchanged substantive information through informal discovery, as well as apprised each other of their respective factual contentions, legal theories, and defenses.  Thus, the Parties negotiated the proposed Settlement with ample knowledge of the strengths and weaknesses of this case and the amounts necessary to compensate Settlement Class Members for their estimated damages.

The Parties engaged in extensive good-faith, arms-length negotiations, including a full-day mediation session conducted before an experienced mediator and subsequent settlement discussions.  Grover Decl. at ¶¶ 14-17.  There was no collusion in reaching the Settlement.  *Id.* Indeed, given the nature of claims, tentative recovery for the Classes, and other settlement terms, the fact that this settlement was negotiated at arms-length is inescapable.

### e. The Experience and Views of Counsel Favor Final Approval

Class Counsel support the Settlement as fair, adequate, reasonable, and in the best interests of the Settlement Classes as a whole.  Class Counsel believe this Settlement to be an excellent result for Settlement Class Members.  *See* Grover Decl. at ¶¶ 6, 25-30.

The endorsement of qualified and well-informed counsel of the settlement as fair is entitled to significant weight.  Class Counsel have significant experience in class action litigation, particularly in the employment context.  *See* Grover Decl. at ¶¶ 2-6, 52.   Plus, as previously mentioned, Class Counsel was among the first to represent plaintiffs with claims under Labor Code § 212 and address the sufficiency of those claims before a court.  Class Counsel are of the

opinion that the Settlement is fair and in the best interest of the Class Members.  Grover Decl. at ¶¶ 6, 25-30.

### f.  Class Members' Positive Reaction to the Settlement Favors Final Approval

Finally, courts look at the reaction of class members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable.  As of September 3, 2008, 521 Class Members had filed a claim.  *See* Keane Decl. at ¶ 16.  Of most importance is the fact that no Class Member has objected to the Settlement here.  *Id.* at ¶ 15.  Moreover, only five Class Members have chosen to opt out of the Settlement. *Id.* at ¶ 14.  In this action, the Court should construe the overwhelming non-opposition to and participation in the Settlement as strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable.

For all of the reasons stated above, the Settlement proposed in this action is fair, reasonable and adequate.

### C.  The Settlement Classes Meet the Rule 23 Class Certification Requirements

In the preliminary approval order, the Court conditionally held that, for settlement purposes, the Settlement Classes satisfy the class certification criteria of Federal Rule 23.  Ex. B. For the reasons to be discussed below, the certification of the Settlement Classes for settlement purposes should be confirmed in a final approval order.

### 1.  The Settlement Classes Satisfy Numerosity

The numerosity requirement is satisfied when joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1).  According to Defendant's records, there are an estimated 1,144 members of the Labor Code Section 2699 Class and up to 2,877 members of the Labor Code Section 212 Class.[5]  Grover Decl. at ¶ 35.  Each of the two Settlement Classes is sufficiently numerous such that joinder is impracticable.

---

[5]  Some individuals may be members of both Settlement Classes.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

**2.   The Settlement Classes Share Common Questions of Law and Fact**

To qualify for certification, proposed class members must share common questions of fact and law.  Fed. R. Civ. P. 23(a)(2).  Here, significant questions common to the members of both Settlement Classes include whether Defendant issued paychecks to them during the Class Period that did not meet the criteria set forth in Labor Code § 212, and whether Class Members paid check cashing fees as a result.  Thus, commonality exists among the Settlement Class members.

**3.   The Class Representative's Claims are Typical of the Proposed Class Members**

Typicality is satisfied if the Class Representative's claims share a common element with the class claims because they arise from a common practice or course of conduct.  *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1232 (9th Cir. 2007) (typicality satisfied where injuries Class Members suffered were caused by defendant's alleged common practice across many Wal-Mart stores); *see also*, *Hanlon*, 150 F.3d at 1019 ("representative claims are 'typical' if they are reasonably coextensive with those of absent Class Members; they need not be substantially identical").  Plaintiff Ford, the proposed Class Representative, has claims typical of the other Class Members' claims.  Ford alleges that she, like the other Class Members, worked for Defendant and received live paychecks that were drawn on an out-of-state bank without any California branches.  Defendant allegedly did not make arrangements to provide Ford and other Class Members with a means to cash their paychecks in California without charge.  As a result, Ford was forced to pay check cashing fees when cashing her paycheck, as were the other Class Members.  Also, because the paychecks were drawn on an out-of-state bank, Ford alleges that she and Class Members could not receive their wages on demand when they presented their paychecks for cashing.  Ford's and the Class Members' claims are based on alleged injuries due to Defendant's alleged common practice of issuing out-of-state paychecks to all California employees.  Thus, the typicality requirement is satisfied in this case.

**4.   The Class Representative and Her Chosen Counsel are Adequate**

In the preliminary approval order, the Court approved Plaintiff Ford as the class representative. Ex. B at ¶ 4.  Plaintiff Ford has demonstrated that she will vigorously represent the

interests of the Class Members.  Grover Decl. at ¶ 38.  Furthermore, Plaintiff Ford hired competent counsel experienced in employment class actions to represent the Classes.  Grover Decl. at ¶¶ 2-6, 39-40, 52; *see also*, Ex. B at ¶ 4 (approving Plaintiff's chosen counsel as Class Counsel).

### 5. The Settlement Classes also Satisfy Rule 23(b) Requirements for Class Certification

The Settlement Classes also meet the requirements of Federal Rule of Civil Procedure Rule 23(b)(3).  Rule 23(b)(3) requires common questions of law or fact to predominate over questions affecting individual Class Members, and the class action to be superior to other methods for efficient adjudication of the claims.  Here, the claims involve Defendant's common practice of issuing paychecks, which applied to all Class Members in the same manner.  Common questions of law and fact, specifically whether Defendant issued paychecks to Class Members that met the requirements of Labor Code § 212 and whether Class Members could cash the paychecks only by paying a check cashing fee, predominate over any individual questions.  Furthermore, a class action is the superior method for settling this controversy because the claims of the individual Class Members are relatively small, making it uneconomical and essentially unfeasible for them separately to litigate their claims.  *See Hanlon*, 150 F.3d at 1023 (finding class action superior where costs of individual claims would dwarf individual recovery).

### D. Class Counsel Request a Fee Award Under the Percentage of Common Fund Doctrine

#### 1. The Requested Fee Matches the Benchmark in this Circuit

Class Counsel respectfully requests that the Court approve the fees and costs to be paid in this action.  Class Counsel seeks an award of 25% of the common fund.  Courts have long recognized the "common fund" or "common benefit"' doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund.  *See e.g.*, *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," quoting *Boeing Co. v. Van Gemert* 444 U.S. 472, 478 (1980)); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79

(N.D. Cal. 1989).  Although courts have discretion to award fees based on either on a percentage of the common fund or on a lodestar analysis, "the primary basis of the fee award remains the percentage method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002).

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 30% of the total settlement value, with 25% considered the benchmark.  *Hanlon*, 150 F.3d at 1029 ("[t]his circuit has established 25% of the common fund as a benchmark award for attorneys' fees.");  *Staton*, 327 F.3d at 952.  Here, Class Counsel is requesting a fee award equivalent to 25% of the total settlement value, directly in line with the accepted benchmark.

Use of the percentage method is favored because both counsel and the class benefit from a larger settlement fund, ensuring counsel's interests remain aligned with class members.  *See Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1266-67 and n.3 (D.C. Cir. 1993).  Furthermore, the percentage method promotes efficiency in counsel's efforts and does not create obstacles to early settlement.  *Id.*  In contrast, the lodestar method rewards attorneys for spending more hours litigating, rather than rewarding efficiency, which discourages early settlement.  *Id.*  In this case, Class Counsel was able to negotiate an early and fair settlement for Class Members without incurring additional risk and delay from continued litigation, making the requested fee award reasonable.

The percentage of common fund is particularly appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf."  *Staton,* 327 F.3d at 972, quoting *Boeing Co.*, 444 U.S. at 478-79.  Here, the Settlement set forth specific lump sum allocations to each Settlement Class, as well as distribution formulas through which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, making the percentage of common fund doctrine appropriate.

### 2.  The Circumstances of This Case Support a 25% Fee Award

When assessing whether the percentage requested is reasonable, courts look to factors such as the results achieved; the risk of litigation; the skill required and the quality of work; the

contingent nature of the fee and the financial burden carried by the plaintiffs; size of the settlement fund, and the awards made in similar cases.  *Vizcaino*, 290 F.3d at 1047.  All of these factors support the fee requested in this action.

Class Counsel provided experienced, competent representation and obtained significant results for the Class Members, all while prosecuting the case on a contingency basis, which presented considerable risk for Counsel.  As articulated by one Southern District of New York court:

> No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Sumitomo Copper Litig.* 74 F. Supp. 2d 393, 396-398 (S.D.N.Y. 1999) (describing the overwhelming weight of federal authority in favor of the percentage fee method).

### a.  The Contingent Nature of This Case

From the outset of the case to the present, prosecution of this action has involved significant financial risk for Class Counsel.  Grover Decl. at ¶¶ 50-53.  Class Counsel undertook this matter solely on a contingent basis, with no guarantee of recovery.  Class Counsel has placed at risk their own resources to prosecute this action with no guarantee of success.  *Id.*  The risks of this case are apparent in the expected battle over class certification.   Even if class certification were granted over Defendant's opposition, there was no assurance that Plaintiff would succeed at trial.  *See id.* at ¶ 42.  Despite such challenges, Class Counsel were able to persuade Defendant that it faced significant liability exposure such that it was willing to pay up to $925,000 to settle Plaintiff's claims.

### b.  The Experience, Reputation, and Ability of Counsel, and the Skill They Displayed in Litigation

Class Counsel are not only experienced in employment class litigation but are among the few attorneys with experience in Labor Code § 212 litigation.  *See* Grover Decl. at ¶¶ 2-6, 39-40, 52.  Class Counsel's skills in developing an extensive factual record and convincing Defendant of its litigation exposure under California law were essential to achieving the Settlement.  Through

their skill and reputation, Class Counsel was able to obtain a settlement that provides an outstanding result for Settlement Class Members.

### c.  The Results Achieved

The excellent results achieved by the Settlement support Class Counsel's request for attorneys' fees.  Settlement Class Members' support for the results achieved by Class Counsel is demonstrated by the absence of any objections to either Settlement or to Class Counsel's request for fees, both of which were described clearly in the Notice.

As of the date this Motion was filed, 521 Class Members filed claims under the Settlement and only five Class Members have opted out of the Settlement.  Keane Decl. at ¶¶ 14, 16. Approximately 271 Labor Code Section 2699 Class Members and 478 Labor Code Section 212 Class Members who submitted valid claims and will each receive monetary settlement payments. *See id*. at ¶ 17.   In addition, the State of California will receive $93,375 for education and enforcement of labor laws. Ex. A at ¶ 14(c).  Moreover, Defendant has agreed to notify all current and future employees that they now have the opportunity to take advantage of free check cashing services.  *Id.* at ¶ 7.  These are significant benefits for the Class Members and the State of California.[6]

Furthermore, the efficiency with which this litigation was conducted and resolved should be rewarded.  The Class Members and the State of California will directly benefit from the prompt and fair resolution of their claims.  They will receive a significant award in a short period of time as opposed to waiting years to recover some undetermined amount if they succeeded at trial, which is an uncertainty in itself.

---

[6] As explained in the Grover Declaration, Class Counsel's experience with surveys and samplings of paycheck practices by other employers indicate that approximately 20-30% of employees who receive live paychecks account for the employees who actually incurred check cashing fees. Grover Decl. at ¶ 24.  Because it is excessively burdensome and impracticable under the circumstances to identify which employees paid check cashing fees, the classes have been defined as those employees who received live paychecks.  *Id.*  Thus, the claims rate is considerably higher than it appears on the surface if one considers that only a portion of the Class likely incurred check cashing fees.  *Id.*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

1

#### d.  Size of the Gross Fund Value

2       Class Counsel negotiated a Gross Fund Value in this case of up to $925,000.  In

3  settlements of this size, fee percentages of more than 25% are commonly awarded.  *See Van*

4  *Vranken,* 901 F. Supp. at 297-98 (noting that percentages of more than 25% tended to be awarded

5  in cases with class funds of less than $10 million).  Class Counsel, however, is requesting the

6  standard benchmark of 25%.

7

#### e.  Preclusion of Other Employment

8       Class Counsel's commitment to this litigation should not be overlooked in assessing the

9  reasonableness of the fee request.  Class Counsel was forced to forego other employment in order

10  to devote the time necessary to pursue this litigation.  *See* Grover Decl. at ¶ 53.

11

### 3.  No Class Member Objected to the Attorney Fee Award

12       Counsel's intention to request payment of attorneys' fees was clearly disclosed to each

13  Class Member in the Court-approved Notice.  *See* Ex. Keane Decl., Exhibit A (Notice).  As of the

14  filing of this brief, there as been not a single objection to the request for attorneys' fees.  Keane

15  Decl. at ¶ 15.  Clearly, the Class Members approve of the award of attorneys' fees. Class Counsel

16  request $231,250 in fees, which equals 25% of the total settlement value.

17

### E.  Class Counsel's Request for Costs is also Reasonable

18       Generally, recoverable costs include "out-of-pocket expenses that would normally be

19  charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal

20  citations and quotations omitted) (also finding that reimbursement of "reasonable expenses, though

21  greater than taxable costs, may be proper").  In the course of this litigation, Class Counsel had to

22  incur out-of-pocket costs totaling $6,595.98 and expect to incur approximately $200.00 in costs

23  related to the final approval of the Settlement, increasing the total costs to $6,795.98.  *See* Grover

24  Decl. at ¶¶ 55-58; *see also*, Ex. C.  As demonstrated in the Grover Declaration submitted herewith,

25  the incurred costs included filing fees, mediator fees, copy charges, computer research, court

26  courier charges, meals, mailing and federal express charges, airfare, mileage costs, and ground

27  transportation.  *See* Grover Decl. at ¶¶ 55-58; Ex. C.  Such costs are appropriate for cost

28

1  reimbursement in these types of cases.  *See e.g., In re United Energy Corp. Sec. Litig.* 1989 WL

2  73211, at *6 (C.D. Cal. 1989) (approving reimbursement of "filing fees, postage, telephone bills,

3  photocopying, legal research assistance, deposition costs, witness fees, and similar items", citing

4  Newberg, *Attorney Fee Awards*, § 2.19 (1987)); *In re Omnivision Technologies, Inc.*, 2008 WL

5  123936, at *11(N.D. Cal. Jan. 09, 2008) (finding costs relating to "photocopying, printing, postage

6  and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants,

7  and the costs of travel for various attorneys and their staff throughout the case" were the types of

8  expenses that "[a]ttorneys routinely bill clients" and, thus, were appropriate costs to be recovered);

9  *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-78 (S.D.Cal.2007) (approving

10  reimbursement of counsel's costs, which included travel costs and mediator fees; also noting the

11  Court's broad discretion when assessing the reasonableness of costs under 28 U.S.C. § 1920 and

12  Fed. R. Civ. P. 54(d)); *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *7 (N.D. Cal.

13  July 18, 1997) (approving nearly $200,000 in expert and mediator fees in addition to general

14  litigation costs).

15       The costs incurred are less than the estimated $10,000, which was included in the Notice

16  and to which no Class Member objected.  The costs incurred by Class Counsel in this litigation

17  benefited Class Members and were necessary to properly litigate this case.  Grover Decl. at ¶ 59.

18  In light of the litigation costs that Class Counsel needed to incur to prosecute this action and the

19  positive reaction of Class Members, the request for reimbursement of costs is reasonable and

20  should be granted.

21            **F.  Class Representative's Enhancement is also Reasonable**

22       Plaintiff seeks an enhancement in the amount of $5,000 to the named Plaintiff Cheryl

23  Ford.  Ex. A at ¶ 14(f)(1).  This payment is intended to recognize the time and efforts that the

24  named Plaintiff spent on behalf of the Class Members.  Grover Decl. at ¶¶ 44-45; *see also*,

25  Declaration of Cheryl Ford at ¶¶ 6-9.  "Courts routinely approve incentive awards to compensate

26  named plaintiffs for the services they provide and the risks they incurred during the course of the

27  class action litigation."  *lngram v. The Coca-Cola Company* (N.D. Ga. 2001) 200 F.R.D. 685, 694

28

1    (internal quotations and citations omitted); *see also*, *Van Vranken*, 901 F. Supp. at 299.  In *Coca-*

2    *Cola*, the Court approved service awards of $300,000 to each named plaintiff in recognition of the

3    services they provided to the class by responding to discovery, participating in the mediation

4    process, and taking the risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at

5    694; *see also, e.g.*, *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to

6    plaintiffs); *Glass v. UBS Financial Services, Inc.*, Case No. C-06-4068 MMC, 2007 WL 221862,

7    at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each named plaintiff).

8        In this case, the named Plaintiff performed the following tasks, among others: (1) assisted

9    Counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the

10   preparation of the complaint in this action; (3) produced evidentiary documents to Counsel; and

11   (4) assisted in the settlement of this litigation.  Grover Decl. at ¶ 38; *see also*, Ford Decl. at ¶¶ 6-9.

12   Moreover, as with any plaintiff who files a civil action, Plaintiff Ford undertook the financial risk

13   that, in the event of a judgment in favor of Defendant in this action, she could have been

14   personally responsible for the costs awarded in favor of the Defendant.  *See e.g.*, *Whiteway v.*

15   *FedEx Kinkos Office & Print Services, Inc.*, No. C 08-2320 SBA, 2007 WL 4531783, at **2-4

16   (N.D. Cal. Dec. 17, 2007).

17       Not a single Class member objected to the enhancement requested on behalf of the named

18   Plaintiff who brought this litigation on their behalf.  Keane Decl. at ¶ 15.  In the aggregate, the

19   enhancement represents only a small percentage of the total settlement value.  The total amount

20   requested for a service award is $5,000, which is 00.54% (just over one-half of one percent) of the

21   total settlement value.

22       In light of the work that the named Plaintiff performed on behalf of Class Members, and

23   the Class Members' response to the Settlement, the requested enhancement is reasonable and

24   appropriate.  Grover Decl. at ¶¶ 44-45.

25   **G.  Additional Settlement of Named Plaintiff's Individual Claims**

26       The Parties also agreed to settle the remaining individual claims that the named Plaintiff

27   alleged against Defendant.  *See* Ex. A at ¶ 14(f)(2).  The named Plaintiff will receive $10,000 in

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH

1  exchange for the release of her claims set forth in the Stipulation. *Id.* Plaintiff requests that the

2  Court approve the individual settlement amount as it is fair and reasonable and resolves all of the

3  named Plaintiff's claims against Defendant. No Class Member objected to this settlement of

4  Plaintiff Ford's individual claims, the payment of which represents less than one half of one

5  percent of the total settlement value.

6  **H. Court Approval of the PAGA Penalty Portion of the Settlement**

7  Pursuant to California Labor Code section 2699(l), the court must review and approve the

8  settlement of penalties sought under that Labor Code section. Cal. Lab. Code § 2699(l). For all of

9  the reasons stated above, the Settlement is fair, reasonable and adequate, and should be approved.

10  As part of the Settlement, Defendant has agreed to pay $132,500 to settle the claims of the Labor

11  Code Section 2699 Class, of which the substantial payment of $93,375 will go to the California

12  Labor and Workforce Development Agency. This portion of the Settlement should be approved.

13  **I. The Court Should Approve the Payment to Rosenthal Claims Administration**

14  As part of the preliminary approval process, the Court approved the hiring of Rosenthal &

15  Co. as the Claims Administrator. Ex. B at ¶ 5. In preliminarily approving the Stipulation, the

16  Court also tentatively approved the payment to Rosenthal of up to $35,000 to perform all of the

17  duties required to administer the Settlement. *See* Ex. B at ¶ 2; *see also*, Ex. A at ¶ 14(g).

18  Rosenthal has performed all of its required duties to date and is committed to completing the

19  claims administration process. *See generally* Keane Declaration. Rosenthal has estimated that its

20  fees as of September 3, 2008 are between $30,000 and $35,000 and does not expect the final fees

21  to exceed the $35,000 original estimate. Keane Decl. at ¶ 21. Plaintiff requests that the Court

22  approve the payment of up to $35,000 to Rosenthal to account for the costs of administration as

23  part of its final order approving the Settlement.

24  **IV.    CONCLUSION**

25  For all the foregoing reasons, Plaintiff requests that the Court (1) grant final approval of

26  this Settlement, (2) approve distribution of the settlement funds to the State of California, the

27  Labor Code Section 2699 Class Members and the Labor Code Section 212 Class Members as set

28

forth in the Stipulation, (3) approve Class Counsel's request for $231,250 as an award of attorneys' fees and $6,795.98 in costs, (4) approve the request for a $5,000 enhancement for the named Plaintiff in this action, (5) approve the $10,000 settlement of named Plaintiff's individual claims against Defendant set forth in the Stipulation, and (6) approve the payment of up to $35,000 to Rosenthal for administration costs.

Date:  September 8, 2008                    KELLER GROVER LLP


_____/s/_____
ERIC A. GROVER
Attorneys for Plaintiff Ford
and Class Counsel

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: C07-02715 TEH